UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LUCIANO J. LAMA,
as Attorney o/b/o L.D.L., an Infant,

                              Plaintiff,

v.                                                      3:23-CV-0462
                                                        (GTS/CFH)
META PLATFORMS, INC.; and INSTAGRAM, LLC,

                              Defendants.
_____

APPEARANCES:                                            OF COUNSEL:

LAMA LAW FIRM                                           LUCIANO J. LAMA, ESQ.
  Counsel for Plaintiff
2343 N. Triphammer Road
Ithaca, NY 14850

ORRICK, HERRINGTON & SUTCLIFFE LLP                      CAROLINE SIMONS, ESQ.
  Counsel for Defendants
222 Berkeley Street, Suite 2000
Boston, MA 02116


GLENN T. SUDDABY, United States District Judge

**<u>DECISION and ORDER</u>**

        Currently before the Court, in this personal injury action filed by Luciano J. Lama

("Plaintiff") against Meta Platforms, Inc. ("Meta"), and Instagram, LLC ("Instagram")

(collectively "Defendants"), is Defendants' motion to dismiss Plaintiff's Amended Complaint for

failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

(Dkt. No. 32.)  For the reasons set forth below, Defendants' motion is granted.

**I.       RELEVANT BACKGROUND**

        **A.       Plaintiff's Amended Complaint**

Generally, in his Amended Complaint, Plaintiff asserts claims for negligent and strict products liability, both premised on an alleged defect in the design, testing, inspection, manufacture, distribution, labeling, sale, and promotion of the Instagram app.  (Dkt. No. 27.) Specifically, Plaintiff alleges that Defendants failed "to implement a child protective procedure whereby parents, school personnel, and other children[-]responsible persons would be able to protect against online bullying wherein the defendants' products were foreseeably weaponized to facilitate online bullying," and that, as a result of this failure, Plaintiff was harmed when he was subjected to hateful and bullying comments that were made about him on the "nrcs.anythings" Instagram account.  (*Id.* at ¶¶ 16-25.)  Plaintiff also alleges that, although his school had requested (through "the app's defective policies and procedures") that Defendants remove this account from the Instagram app, Defendants failed to do so, and that Defendants' failure resulted in Plaintiff's injuries.  (*Id.* at ¶¶ 18-25.)

### B.    Parties' Briefing on Defendants' Motion to Dismiss

#### 1.    Defendants' Memorandum of Law

Generally, in their motion to dismiss, Defendants argue that Section 230 of the Communications Decency Act bars Plaintiff's claims.  (Dkt. No. 32, Attach. 1.)  In making this overarching argument, Defendants make three sub-arguments: (1) they are "interactive computer service providers" as defined by Section 230; (2) other information-content providers (here, third-party users of Instagram who made the posts that allegedly injured Plaintiff), rather than Defendants, supplied the content at issue; and (3) Plaintiff's claims, even framed as being premised on a theory of products liability, inherently seek to treat Defendants as the publishers of that third-party content.  (*Id.*)

### 2.   Plaintiff's Opposition Memorandum of Law

Generally, in his response memorandum, Plaintiff makes four arguments.  (Dkt. No. 33.)
First, Plaintiff argues that he has plead facts sufficient to state plausible claims for products
liability, and that, rather than assert that he has not done so, Defendants argue only that they are
entitled to immunity from suit pursuant to Section 230.  (*Id.* at 8.)

Second, Plaintiff argues that the Court should not decide the question of whether
Defendants are entitled to immunity on a motion to dismiss because there "are no affidavits, no
affirmations, no corporate records, not even a clear definition of the relationships among Meta,
Instagram, and 'nrcs.anythings,' nor definitions of what each of these entities are."  (*Id.* at 9-10.)

Third, Plaintiff argues that Defendants have nonetheless failed to show that the Amended
Complaint either bases the claims on third-party content or treats Defendants as publishers in the
context of his claims.  (*Id.* at 11-13.)  Specifically, Plaintiff argues that his claims are not based
on the content of the relevant "vile" messages or on the fact that Defendants created, sponsored,
condoned, edited, corrected, enhanced, or modified those statements, but rather on the fact that
Instagram itself is "faulty, dangerous, and lends itself to horrid, dreadful and destructive use,
with no safeguards," including a defective mechanism for requesting the removal of accounts or
content. (*Id.*)

Fourth, Plaintiff argues that he has properly alleged a defect in Instagram through his
allegations that there was a "defect in the Instagram App *mechanism* that precluded the school
from stopping the attacks on a highly vulnerable teen student by other students using
'nrcs.anythings.'"  (*Id.* at 14-15.)  He further argues that Defendants failed to provide a required
notification of available parental control precautions.  (*Id.* at 15.)

### 3.     Defendants' Reply Memorandum of Law

Generally, in reply to Plaintiff's response, Defendants make three arguments.  (Dkt. No. 34.)  First, Defendants argue that the Court can and should determine whether Section 230 bars Plaintiff's claims at this stage because all the information necessary to do so is apparent on the face of the Amended Complaint, and courts routinely decide this issue on a motion to dismiss. (*Id.* at 5-7.)

Second, Defendants argue that Plaintiff's claims treat them as the publisher of third-party user content because, although ostensibly premised on a defect in the Instagram app, his supporting allegations center around the statements made by and on the "nrcs.anythings" account and Defendants' failure to have an adequate procedure that would allow such content or account to be removed.  (*Id.* at 7-10.)

Third, Defendants argue that Plaintiff's attempt to raise Section 230(d) as a source of liability for the first time in his response memorandum should be rejected for two reasons: (1) the attempt is improper because that provision does not create a private cause of action; and (2) the attempt is undermined by his own pleadings because allegations regarding a failure to provide notice are absent from the Amended Complaint and contradicted by the original Complaint which attached evidence regarding features and tools Defendants provide for users to block and restrict objectionable or bullying user material.  (*Id.* at 11-12.)

## II.     GOVERNING LEGAL STANDARDS

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a

challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal."  *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."  *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court.  *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal"

notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 555-70. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 555. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for

relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks

and citations omitted).  However, while the plausibility standard "asks for more than a sheer

possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability

requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to

relief, "the tenet that a court must accept as true all of the allegations contained in the complaint

is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action,

supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement"

will not suffice.  *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted).  Rule 8

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

(citations omitted).

## III.   ANALYSIS

After carefully considering whether 47 U.S.C. § 230 bars Plaintiff's negligent and strict

products liability claims, the Court answers this question in the affirmative for the reasons stated

in Defendants' memoranda of law.  *See supra* Parts I.B.1. and 3 of this Decision and Order.  To

those reasons, the Court adds the following analysis.

Section 230(c)(1) states that "[n]o provider or user of an interactive computer service

shall be treated as the publisher or speaker of any information provided by another information

content provider." 47 U.S.C. § 230(c)(1). This provision "shields a defendant from civil liability when: (1) it is a 'provider or user of an interactive computer service,' as defined by § 230(f)(2); (2) the plaintiff's claims 'treat[]' the defendant as the 'publisher or speaker' of information []; and (3) that information is 'provided by' an 'information content provider,' [] other than the defendant interactive computer service." *Force v. Facebook, Inc.*, 934 F.3d 53, 63-64 (2d Cir. 2019) (internal citations omitted). The Second Circuit has indicated that "the text of Section 230(c)(1) should be construed broadly in favor of immunity" in light of Congress' objectives in passing the statute. *Force*, 934 F.3d at 64 (collecting cases). Moreover, it has recognized that "[t]he majority of federal circuits have interpreted [Section 230] to establish broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Herrick v. Grindr LLC*, 765 F. App'x 586, 589 (2d Cir 2019) (internal quotation marks omitted).

A review of some definitions is appropriate. The statute itself defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2).

The statute further defines an "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). "[A] defendant will not be considered to have developed third-party content unless the defendant directly and 'materially' contributed to what made the content itself 'unlawful.'" *Force*, 934

F.3d at 68 (quoting *Fed. Trade Commisssion v. LeadClick Media, LLC*, 838 F.3d 158, 174 [2d Cir. 2016]).

A "publisher" for the purposes of this statute has been defined as including a party that maintains a website that acts as a forum for third-party speech and communication and has the ability to, among other actions, remove content from such website (or, in the converse, choose not to remove such content). *Force*, 934 F.3d at 65. The mechanisms by which an interactive computer service makes decisions regarding whether to allow or remove content has no impact on whether it is entitled to immunity; "'so long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific edit[orial] or selection process.'" *Force*, 934 F.3d at 67 (quoting *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 [9th Cir. 2003]). Where a products liability or failure-to-warn claim is "inextricably related to [a defendant's] role in editing or removing offensive content," such claims are "precisely" those for which Section 230 is intended to provide immunity. *Herrick v. Grindr, LLC*, 306 F.Supp.3d 579, 588 (S.D.N.Y. 2018), *aff'd Herrick*, 765 F. App'x at 589-90.

### A.    Whether Defendants Are Providers or Users of an Interactive Computer Service

Courts within the Second Circuit have routinely found that social media websites and online matching services are interactive computer services. *See Mosha v. Facebook, Inc.*, 20-CV-2608, 2021 WL 230180, at *3 (S.D.N.Y. Jan. 22, 2021) (collecting cases); *Herrick v. Grindr, LLC*, 306 F.Supp.3d 579, 588 (S.D.N.Y. 2018) (collecting cases), *aff'd Herrick*, 765 F. App'x at 589-90; *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 156 n.10 (E.D.N.Y. 2017) (collecting cases). In the Amended Complaint, Plaintiff alleges that Defendant Meta is the

owner and operator of Defendant Instagram, which he characterizes as a "social media platform" and "an application that is widely available to users throughout the United States and New York State." (Dkt. No. 27, at ¶ 3.) The other allegations plausibly suggest that Defendants "have been engaged in the business of the manufacture, production, and sale, license, lease, or otherwise granted use of social media apps to ultimate consumers such as the plaintiff and did, in fact, produce, manufacture, production and sale [sic], license, lease, and otherwise grant use of the app known as Instagram to the plaintiff and other children at his school." (Dkt. No. 27, at ¶ 14.) These allegations are sufficient on their face to plausibly suggest that Defendants (to the extent that it is the Instagram app solely and specifically that is the subject of his claims) are an interactive computer service for the purposes relevant to this action.

Although he does not directly argue that Defendants are not an interactive computer service, Plaintiff appears to suggest as much in his response brief through multiple pages of quotations to various sources about the goals and uses of Defendants Meta and Instagram, the definition of an application, and a quotation from *In re Google Digital Advertising Antitrust Litig.*, 627 F.Supp.3d 346 (S.D.N.Y. 2022), all causing Plaintiff to draw the apparent conclusion that "an 'App' such as Instagram is a *product*, [and] META is 'akin to a wholesaler' of that product" rather than an interactive computer service. This argument is as baffling as it is misplaced for two reasons. Firstly, the fact that Defendant Meta provides services or products other than hosting social media sites like Instagram is of little relevance to this action because the harm Plaintiff alleges occurred only through Defendant Instagram, not any of Defendant Meta's other products, and indeed Defendant Instagram is the only of Defendant Meta's products that Plaintiff names in his Amended Complaint as being defectively manufactured or designed.

10

Secondly, *In re Google Digital Advertising Antitrust Litigation* has no relevance to this case.

That case involved questions regarding whether Google violated the Sherman Act and state

antitrust laws in its agreements with online advertising companies related to its provision of ad

server and ad exchange services; it had nothing to do with whether Google or any other party

was an interactive computer service under Section 230, nor does the specific selection Plaintiff

quoted in his response brief support the conclusion he asserts.  *In re Google Digital Advertising*

*Antitrust Litig.*, 627 F.Supp.3d at 361.

 For the above reasons, Defendants are correct that the face of the Amended Complaint

sufficiently shows that they are an interactive computer service for the purposes of Section 230.

  **B. Whether the Information that Is Allegedly Spoken or Published Was Provided by an Information Content Provider Other Than Defendants**

 In the Amended Complaint, Plaintiff alleges that he suffered an injury as a result of

careless design, testing, inspection, manufacture, distribution, labeling, sale, or promotion of

Instagram, specifically because that app was used by others, including the "nrcs.anythings"

account and various users who commented on a post by that account, to harass and bully him.

(Dkt. No. 27, at ¶¶ 15-28, 34-37.)  The allegations indicate that such harassment and bullying

was in the form of comments written on the app.  (*Id.*)  Plaintiff's claims, despite being couched

in the terms of products liability, therefore clearly allege that it was the posting (or hosting) of

the third-party statements, not Instagram itself, that caused his harm; had those statements not

been made on the app, the alleged harm would have never come about.

 Although Plaintiff attempts to argue that his claims are not "based upon the *content* of the

vile text messages" posted to Instagram, he promptly shows that he cannot sustain that argument

by stating that the claim is premised on the theory that "the Instagram "App" is faulty,

dangerous, and *lends itself to horrid, dreadful and destructive use*, with no safeguards."  (Dkt.

No. 33, at 11 [emphasis added].)  Even in attempting to argue otherwise, Plaintiff himself cannot

escape admitting that it was that "horrid, dreadful, and destructive use" (i.e., the comments

posted by third-party users) that caused his harm, and the only defect is that Instagram facilitates

users to post such things.  Try as he might to make his claims about the way Instagram is

designed, his claims are inherently grounded in third-party content posted to the app.  Plaintiff

further makes no arguments and includes no allegations in the Amended Complaint to suggest

that Defendants either created or developed that content as opposed to merely hosting it as a

social media site.

　　　For these reasons, the Court agrees with Defendants that the face of the Amended

Complaint sufficiently shows that Plaintiff's claims are based on content provided by internet

content providers other than Defendants.

### C.　　Whether Plaintiff's Claims Treat Defendants as Publishers or Speakers of the Information

　　　For many of the same reasons that Plaintiff's Amended Complaint can be construed only

as being inherently based on third-party content, it also can be construed only as treating

Defendants as the publisher or speaker of such content.  *See Herrick*, 765 F. App'x at 590-91

(finding claims that app was defective treated the defendant as a publisher and were barred by

Section 230 because the "alleged lack of safety features 'is only relevant to Herrick's injury to

the extent that such features would make it more difficult for his former boyfriend to post

impersonating profiles or make it easier for Grindr to remove them,'" and thus the claims were

nothing more than an attempt to hold the defendant liable for its failure to prevent or remove

such third-party content).  Again, the harm that allegedly flows from the third-party statements posted by and to the "nrcs.anythings" account, and the defect that allegedly exists in the design of the Instagram app is related to the policies and procedures regarding requesting the removal of offensive content and/or accounts.  (Dkt. No. 27, at ¶¶ 16-25, 27; Dkt. No. 33, at 11-12.)

In an attempt to get around this fact, Plaintiff argues that "[t]he claim against these defendants is *not* that they created, sponsored, condoned, edited, corrected, enhanced or modified the horrible statements aimed at one highly vulnerable child; the claim is that the *product* made and sold to the public–the Instagram "App" is faulty, dangerous, and lends itself to horrid, dreadful and destructive use, with no safeguards."  (Dkt. No. 33, at 11.)  He further argues that he "does not complain in this action of the contents of the Instagram App, but properly and clearly complains of the defect in the Instagram App *mechanism* that precluded the school from stopping the attacks on a highly vulnerable teen student by other students using 'nrcs.anythings.'"  (*Id.* at 14.)  Yet both of these arguments inescapably return to the ultimate conclusion that Instagram, by some flaw of design, allows users to post content that can be harmful to others (and which was harmful to the minor Plaintiff in this case) and does not have a mechanism to require Defendants to remove such content when reported.  Nowhere in Plaintiff's Amended Complaint (or even his arguments in his response brief) does Plaintiff allege that it was the defect in Instagram that alone caused his alleged injuries; rather, the alleged harm occurred as result of content posted by third-party users on the app that Defendants did not remove or did not allow others to remove.  As a result, contrary to Plaintiff's attempts to frame them otherwise, his claims are based on statements made by content-providers other than Defendants and seek to essentially treat Defendants as the publishers of that information based

on their failure to prevent or remove such statements.  The Court therefore finds that the Amended Complaint also supports the third prong of the immunity test and that Defendants are entitled to such immunity from Plaintiff's claims pursuant to Section 230.

Finally, Plaintiff additionally argues that he has claimed that "Defendants produced a faulty product, with deficient mechanisms, lack of warnings and non-compliant with Title 47 section 230(d), among other things."  (Dkt. No. 33, at 15.)   Section 230(d) states that "[a] provider of an interactive computer service shall, at the time of entering an agreement with a customer for the provision of interactive computer service and in a manner deemed appropriate by the provider, notify such customer that parental control protections (such as computer hardware, software, or filtering services) are commercially available that may assist the customer in limiting access to material that is harmful to minors."  47 U.S.C. § 230(d).  To the extent Plaintiff appears to seek to rely on some failure of Defendants to provide such notice, that argument does not save his claims.

As an initial matter, and most importantly, Plaintiff does not make any such claim in the Amended Complaint related to a failure to provide any required notice and cannot (as a party represented by counsel) constructively amend the Amended Complaint merely by making arguments in a response brief.  Moreover, Plaintiff's argument ignores the fact that the notification required by Section 230(d) must be made only to a "customer," not to the general public at large.  Plaintiff notably does not allege that he had an Instagram account or otherwise had ever used the app as a "customer" who had entered into an agreement with Defendant Instagram such that he would have been entitled to such notice.  Rather, he alleges that he saw the injurious messages when "children brandished to the plaintiff, in person, the . . . harmful and

14

bullying conduct using said app." (Dkt. No. 27, at ¶ 25.)  The only allegations he has provided to even remotely suggest he was entitled to notification is a generic allegation that Defendants are "engaged in the business of the manufacture, production and sale, license, lease, and otherwise grant use of social media apps to ultimate customers such as the plaintiff and did, in fact, produce, manufacture, production and sale [sic], license, lease, and otherwise grant use of the app known as Instagram to the plaintiff and other children at his school.  (Dkt. No. 27, at ¶ 14.)  However, even taken as true as it must be at this stage, this allegation falls short of plausibly suggesting that Plaintiff was a "customer" of Instagram as discussed by Section 230(d). Plaintiff has therefore not alleged sufficient facts to plausibly suggest there would be a basis for any such claim (assuming that Section 230[d] provides a private cause of action for its violation, which the Court need not address in this Decision and Order) even if it had been pled in the Amended Complaint.

For all of the above reasons, Plaintiff's claims based on negligent and strict products liability are barred by 47 U.S.C. § 230(c)(1), and his Amended Complaint must be dismissed.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 32) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 27) is **<u>DISMISSED</u>**.

Dated: May 6, 2024
    Syracuse, New York

Glenn T. Suddaby
U.S. District Judge